UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEVLON L. DRIGGERS,

        Plaintiff,

        v.                                    Case No. 13-C-1289

CHRISTOPHER SCHMALING,
MATTHEW HASTINGS,
NANCY SMITH, and
DOUGLAS WEARING,

        Defendants.

---

ORDER GRANTING DEFENDANTS HASTINGS AND SMITH'S MOTION TO DISMISS (DOC. 18), GRANTING DEFENDANTS SCHMALING AND WEARING'S MOTION TO DISMISS (DOC. 29), DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DOC. 34), DENYING PLAINTIFF'S MOTION FOR COURT TO TAKE JUDICIAL NOTICE (DOC. 35), DENYING AS MOOT PLAINTIFF'S MOTION TO STAY TIME LIMITS TO FILE RESPONSE AND MOTION FOR ORDER TO SERVE PLAINTIFF WITH DOCUMENTS (DOC. 40), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DOC. 49), AND DISMISSING CASE

The pro se plaintiff, Devlon L. Driggers (Driggers), who is incarcerated at Oshkosh Correctional Institution, has filed this civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis*. Defendants Racine County Sheriff Christopher Schmaling (Sheriff Schmaling) and Captain Douglas Wearing (Captain Wearing) have filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Racine County Assistant District Attorney Matthew Hastings (ADA Hastings) and Probation/Parole Agent Nancy Smith (Agent Smith), who are represented by separate counsel, have also filed a motion to dismiss for failure to state a claim. For the reasons set forth herein, the motions will granted.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires a plaintiff to clear two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in sufficient detail to give a defendant fair notice of the claim and the grounds on which it rests. *Id.* Although specific facts are not necessary, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Second, the complaint must set forth a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *EEOC*, 496 F.3d at 776 (citing *Bell Atl. Corp.*, 550 U.S. at 555-56, 569 n.14 (2007)). When considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## BACKGROUND OF THE CASE

According to the complaint, on May 16, 2013, Driggers was arrested in Racine County, Wisconsin for domestic violence, misdemeanor battery. (Compl. ¶ IV.A.1.) On May 17, 2013, as a condition of being released on bond, Driggers was ordered to have no

contact with the alleged crime victim. (Compl. ¶ IV.A.2.) Driggers was placed on a probation hold by the Wisconsin Department of Corrections (DOC), did not make bond, and remained in jail. (Compl. ¶ IV.A.3.) Between May 17, 2013, and June 6, 2013, Driggers had personal contact and telephone contact with the alleged crime victim. (Compl. ¶ IV.A.4.)

On June 3, 2013, Agent Smith informed Driggers that he was violating the no-contact condition of his bond by continuing to have contact with the alleged crime victim. (Compl. ¶ IV.A.5.) Driggers responded that under Wisconsin law, the no-contact condition of a bond does not apply if the accused does not post bond and is not released from custody.[1] *Id.* Driggers also told Agent Smith that the alleged crime victim had expressed her desire to see Driggers, and that she told Driggers to call and to write to her. *Id.* Agent Smith responded that she believed that the no-contact condition of the bond did apply, that she would get Driggers's visitation privileges stopped, that she had listened to recordings of the calls between Driggers and the alleged crime victim, and that she had talked to ADA Hastings about possible charges and/or punishment because of the calls that Driggers made in violation of the no-contact condition. (Compl. ¶ IV.A.6.)

On June 3, 2013, Agent Smith inquired of ADA Hastings, by email, whether the no-contact condition of the bond applied where Driggers had not posted bond. *Id.* Agent

---

[1] In *State v. Orlik*, 226 Wis. 2d 527, 538-540, 595 N.W.2d 468 (Ct. App. 1999), the court of appeals held that Wis. Stat. §§ 969.01(4), 969.03(1)(e), and 969.08(1) authorize a state trial court to impose conditions that govern a defendant when released from custody on bond, but do not authorize "orders governing the defendant's conduct if he is not released because he cannot post bail." The court of appeals, however, recognized that the trial court and the State may be "understandably concerned about the trial court's ability to protect victims and potential witnesses from threats or intimidation even when a defendant remains incarcerated pending trial," and pointed out that Wis. Sat. § 940.47 authorizes a trial court to issue orders protecting victims and witnesses from incarcerated defendants pending trial. *See id.*

Smith falsely told ADA Hastings that Driggers stated that he would not abide by any no-contact provision from any court, that the alleged crime victim wanted no further contact with Driggers, and that she was afraid of him.[2] (Compl. ¶¶ IV.A.7, 8).

Agent Smith and ADA Hastings (working in his investigative and administrative capacity) listened to the telephone calls between Driggers and the alleged crime victim. (Compl. ¶ IV.A.10.) On June 4, 2013, when ADA Hastings told Captain Wearing that he would seek to prevent Driggers from having contact with the alleged crime victim, Captain Wearing informed ADA Hastings that Driggers would be placed in administrative segregation in the jail if the court signed an order restricting his telephone calls. (Compl. ¶ IV.A.11.)

On June 4, 2013, ADA Hastings filed a motion with the circuit court under Wis. Stat. § 940.47(4)[3], for an order prohibiting all communication between Driggers and the alleged crime victim, including restrictions on visitation, telephone contact, mail, and

---

[2] Agent Smith also "beguiled" the alleged crime victim into believing that she had "broken" the no-contact order, told the alleged crime victim that she and ADA Hastings were going to do their best to send Driggers to prison, and threatened the alleged crime victim with arrest if she did not "write a statement to that effect." (Compl. ¶ IV.A.9.)

[3] Wisconsin Statute 940.47, provides:

Any court with jurisdiction over any criminal matter, upon substantial evidence, which may include hearsay or the declaration of the prosecutor, that knowing and malicious prevention or dissuasion of any person who is a victim or who is a witness has occurred or is reasonably likely to occur, may issue orders including but not limited to any of the following:

(1) An order that a defendant not violate ss. 940.42 to 940.45.
(2) An order that a person before the court other than a defendant, including, but not limited to, a subpoenaed witness or other person entering the courtroom of the court, not violate ss. 940.42 to 940.45.
(3) An order that any person described in sub. (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.
(4) An order that any person described in sub. (1) or (2) have no communication with any specified witness or any victim, except through an attorney under such reasonable restrictions as the court may impose.

4

communication through a third party such as another inmate, except for Driggers's attorney, while Driggers remained in jail during the prosecution of his criminal case. (Compl. ¶ IV.A.12.) Although not expressly mentioning "administrative segregation," the motion requested, and a proposed order drafted by ADA Hastings required, that Driggers be confined in a location where Sheriff Schmaling and the DOC could ensure strict adherence to the order and absolutely restrict Driggers's communication with the alleged crime victim.[4] (Compl. ¶ IV.A.13). Driggers alleges that Agent Smith's "false assertions" and "blatant lies" were the "substance and center" of the motion and proposed order (Compl. ¶ IV.A.15).

On June 6, 2013, Racine County Circuit Court Judge Faye M. Flancher heard the motion over Driggers's objection to proceeding without counsel, after the court permitted Driggers's attorney to withdraw, and after ADA Hastings argued that the motion should be heard even if Driggers was not represented.[5] (Compl. ¶¶ IV.A.14-16.) The circuit court denied Driggers's request for substitution of judge. (Compl. ¶ IV.A.17.) ADA Hastings conceded, on the record, that the no-contact condition of the bond did not apply because Driggers was not released from custody. (Compl. ¶¶ IV.A.18.) ADA Hastings argued in favor of a no-contact order under Wis. Stat. § 940.47(4), however, because of (1) the numerous contacts between Driggers and the alleged crime victim, (2) Driggers's attempt

---

[4] The court takes judicial notice of the motion and order which are official state court records in *State of Wisconsin v. Devlon Driggers*, Racine County Circuit Court Case Nos. 2013-CM-0819, 1011, and 1039. *See* Affidavit of David C. Rice (Rice Aff.), ¶¶ 2-3, Exhs. A, B. *See* Fed. R. Evid. 201; *see also Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994); *Gen. Elec. Capital v. Lease Resolution*, 128 F.3d 1074, 1080-1082 (7th Cir. 1997).

[5] The court takes judicial notice of the transcript of the motion hearing which is an official state court record in *State of Wisconsin v. Devlon Driggers*, Racine County Circuit Court Case Nos. 2013-CM-0819, 1011, and 1039. *See* Rice Aff. ¶ 4, Exh. C.

to persuade her to recant her statement to police, and (3) Driggers's criminal history of domestic violence and prior attempts to persuade crime victims not to report crimes to police or to recant statements made to police, including the alleged crime victim in his case less than six months earlier.[6] (Compl. ¶¶ IV.A.18-19.) Driggers alleges that ADA Hastings stated at the motion hearing that he desired to "punish" Driggers for violating an order that did not exist (Compl. ¶ IV.A.18), but the transcript of the hearing does not contain the statement attributed to ADA Hastings by Driggers.[7] See Rice Aff. ¶ 4, Exh. C.

The circuit court granted the State's motion, except with respect to the restrictions on mail, and orally ruled that all of Driggers's telephone calls be restricted (except calls to his attorney), that he have no contact with the alleged crime victim (including by mail), that no third persons (including his mother) were to contact the victim, and that Driggers be placed in "administrative segregation."[8] (Compl. ¶ IV.A.19). Driggers was placed in administrative segregation, was allowed out of his cell only one hour each day, and was restricted from making calls to his family or friends. (Compl. ¶ IV.A.20.)

Driggers filed a petition for a writ of habeas corpus in the Wisconsin Court of Appeals against Sheriff Schmaling and for a supervisory writ against the Racine County

---

[6] ADA Hastings noted that Driggers had made a minimum of 157 calls to the cell phone of the alleged crime victim since the date of the initial appearance, and that, in the telephone calls (some of which were heard by the circuit court), Driggers tried to manipulate the crime victim to lie about the alleged crime. See Rice Aff. ¶ 4, Exh. C, at 4, 8.

[7] ADA Hastings did state: "I think it's time that we put some teeth behind this no contest order and at a minimum order him under that statute listed in the motion that he is to have absolutely no contact." (Rice Aff. ¶ 4, Ex. C at 4.)

[8] The circuit court's written order, drafted by ADA Hastings, did not expressly mention "administrative segregation" but it did require that Driggers be confined in a location where Sheriff Schmaling and DOC could ensure strict adherence to the order and absolutely restrict Driggers's communication with the alleged crime victim. (Compl. ¶ IV.A.13.) See Rice Aff. ¶ 3, Exh. B.

Circuit Court. (Compl. ¶¶ IV.A. 21, 27.) On August 22, 2013, the court of appeals entered an opinion and order denying the petitions.[9] (Compl., ¶ IV.A. 21). The court of appeals decided that the restrictions imposed by the circuit court were reasonably and necessarily imposed, after a hearing, to protect the alleged crime victim and to safeguard the integrity of the prosecution. The court of appeals further decided that Driggers had not demonstrated a denial of due process or other constitutionally-protected rights, and that Driggers had other available remedies such as a petition for leave to appeal from the order of the circuit court. (Rice Aff. ¶ 5, Exh. D.)

Captain Wearing informed Driggers that only his telephone privileges – and not his mail or visitation privileges – were restricted per the court order. (Compl. ¶ IV.A.23.) Driggers alleges that the mail he sent to his mother was seized by the jail and that he was subjected to loud noise while in administrative segregation which interrupted his sleep. (Compl. ¶¶ IV.A. 24, 25, 30.) He also alleges that during his time on administrative segregation, his phone was turned off so he could not access the court or call his family. (Compl. ¶¶ IV.A. 26, 29, 30.) Driggers further alleges that, because Sheriff Schmaling was named in the writ of habeas corpus before the Wisconsin Court of Appeals, he had direct knowledge of any unconstitutional restrictions and punishments. (Compl. ¶¶ IV.A. 27, 28.)

For relief, Driggers seeks $1,000,000 punitive damages, $1,000,000 for pain and suffering, and $1,000,000 for emotional psychological distress. He also seeks injunctive

---

[9] The court takes judicial notice of the opinion and order of the Wisconsin Court of Appeals which is an official state court record in *State ex rel. Devlon Driggers v. Christopher Schmaling*, No. 2013AP1340-W, and *State ex rel. Devlon Driggers v. Circuit Court for Racine County*, No. 2013AP1341-W. *See* Rice Aff. ¶ 5, Exh. D.

relief against Sheriff Schmaling and ADA Hastings "requesting that no further treatment be done in this matter, be distributed to any other inmate of this nature." (Compl. ¶ V.)

The Screening Order summarized the complaint allegations and permitted Driggers to proceed as follows:

> The court finds that the foregoing allegations state retaliation and equal protection claims as well as due process concerns arising from the alleged punitive placement of plaintiff in segregation at the Racine County Jail. Moreover, this case may proceed on plaintiff's First Amendment claim regarding his mail. Finally, the court notes that the complaint appears to challenge a Wisconsin state court order. However, such claims face scrutiny under the Rooker-Feldman doctrine. *See Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) ("*Rooker-Feldman* prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced."). But, at this stage of plaintiff's case, the court cannot definitively ascertain whether *Rooker-Feldman* applies.

(Court's Order of April 18, 2014, at 7.)

HASTINGS AND SMITH'S MOTION TO DISMISS

ADA Hastings and Agent Smith first contend that Driggers's claims for damages against them in their official capacities are barred by Eleventh Amendment immunity. In regard to the official capacity claims, a suit against a state official in his or her official capacity is a suit against the official's office. As such, it is not different than a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Driggers's official capacity claims against Hastings and Smith are therefore claims against the state. However, the Eleventh Amendment bars suits for damages in federal court against unconsenting states unless Congress has exercised its power to override the immunity. *Id.* at 66. Therefore, to the extent that Driggers seeks compensatory and punitive damages, his official capacity claims must be dismissed because of Eleventh Amendment

8

immunity and because the state is not a person suable under 42 U.S.C. § 1983. *See id.* at 66-67, 71.

Next, ADA Hastings and Agent Smith contend that Driggers's action against Hastings is barred by absolute prosecutorial immunity except when Hastings investigated Driggers's contacts with the alleged crime victim. They concede that ADA Hastings was working in his investigative capacity when he investigated Driggers's contacts with the alleged crime victim and that actions based on such investigations are not barred by absolute prosecutorial immunity.[10] In response, Driggers contends that ADA Hastings fails to admit that his conversations with Agent Smith and Captain Wearing as well as their plans to punish Driggers were done in his investigatory capacity. According to Driggers, the "intricate plot was brought to fruition by misusing the state court process[ ]" and "Hastings can't immunize himself by perfecting his actions in the trial court." (Pl.'s Resp., ECF No. 36, at ECF-numbered page 4.)[11] Driggers goes on to state that at the hearing on the motion, ADA Hastings "willfully admitted that he ha[d] spoken with the jail and discussed the plot with jail staff, defendant Wearing, and wrote his desire in the proposed order to assure his plot would be mete[d] out, which was torture in Racine County Jail" and that "these officials targeted him out and treated him differently than other pretrial detainees." *Id.* According to Driggers, ADA Hastings is not protected by absolute prosecutorial immunity for his actions in court, citing *Tillman v. Burge*, 813 F. Supp. 2d 946,

---

[10] Hastings and Smith contend that these claims are barred by qualified immunity and that contention will be addressed in the next section.

[11] Driggers numbered his brief with page one starting on the second page. For the sake of clarity and consistency, the court will use the court's electronic case filing (ECF)-generated page numbers which designates the first page of the brief as page one, the second page as page two, etc.

966-67 (N.D. Ill. 2011) (prosecutor was not entitled to absolute immunity from § 1983 suit by a former prisoner who served nearly twenty-four years in prison for rape and murder before his conviction was vacated and charges were dismissed, and the complaint the prosecutor was alleged to have personally participated in the prisoner's interrogation and that of the codefendant, then suppressed truth concerning those events. These allegations put the prosecutor's conduct outside the scope of the prosecutorial function).

Recently, the Seventh Circuit Court of Appeals reiterated the scope of absolute prosecutorial immunity:

> A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 410, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Whether or not an action falls within the scope of his prosecutorial duties depends upon its function. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 342-43, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (citing *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process. *Imbler*, 424 U.S. at 430, 431 n. 33, 96 S.Ct. 984.
>
> Absolute immunity extends beyond an individual prosecutor's decision to indict or try a case. *See Van de Kamp*, 555 U.S. at 344-48, 129 S.Ct. 855. The protection endeavors to preserve the functioning of the public office, *id.* at 345, 129 S.Ct. 855 (citing *Kalina v. Fletcher*, 522 U.S. 118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)), and, thus, encompasses any action directly relevant to a prosecutor's ability to conduct a trial. *Id.* at 344, 129 S.Ct. 855 (distinguishing between administrative actions like training prosecutors on properly disclosing to the defense material evidence, which are shielded as prosecutorial functions, and administrative decisions such as workplace hiring and facilities management, which do not fall within the ambit of absolute immunity).
>
> Nevertheless, a prosecutor has job responsibilities that are not prosecutorial in nature. There exists a "difference between [his] advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and [his] detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested . . . ." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125

L.Ed.2d 209 (1993) ("Buckley III"). Actions and decisions made in accordance with the latter set of responsibilities entitle him only to the qualified immunity granted to the police and other members of the prosecution team who share those duties. *Id.* (citing *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).

*Fields v. Wharrie*, 672 F.3d 505, 510-11 (7th Cir. 2012).

In his complaint, Driggers charges that ADA Hastings engaged in the following acts: (1) he listened to telephone calls between Driggers and the alleged crime victim; (2) he filed a motion seeking to prohibit all communication between Driggers and the alleged crime victim, including restrictions on visitation, telephone contact, mail, and communication through a third party such as another inmate, except for Driggers's attorney, while Driggers remained in jail during the prosecution of his criminal case; (3) he deprived Driggers of his constitutional right to counsel when he argued at the motion hearing that the court should hear the motion even though Driggers was not represented by counsel; (4) he argued in favor of the motion even though he conceded that Driggers had not violated the no-contact condition of his bond (because he remained in custody and was not released on bond); and (5) he drafted the written order that the court signed, restricting Driggers's communication with the alleged crime victim.

Here, ADA Hastings's filing of the motion to restrict Driggers's communications with the alleged crime victim, his participation in the hearing on the motion, and his drafting of orders for the court were protected by absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 423. It is true that a prosecutor cannot retroactively receive absolute prosecutorial immunity for unlawful conduct during an investigation, simply by presenting evidence resulting from the investigation at trial. *See Fields v. Wharrie*, 740 F.3d 1107, 1111-1114 (7th Cir. 2014). However, ADA Hastings's investigatory conduct was not unlawful. *Cf. id.*

11

at 1110 (during an investigation, prosecutor coerced witnesses to give false or fabricated testimony at trial); *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982) (prosecutor personally ordered that pretrial detainee be confined in dirty, bug-infested jail under offensive conditions); *Tillman*, 813 F. Supp. 2d at 965-66 (N.D. Ill. 2011) (prosecutor personally participated in unconstitutional interrogation and coerced the defendant to give a false confession). Rather, as will be discussed herein, ADA Hastings's (and Agent Smith's) investigation of Driggers's contacts with the alleged crime victim are subject to qualified immunity because their alleged activities did not violate a clearly established constitutional right.

Hastings and Smith contend that this action against Smith as well as against Hastings based on actions that were undertaken in his investigatory capacity is barred by qualified immunity. They further contend that Driggers fails to state a conspiracy claim.[12] Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). In determining qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.* at 232. Courts may exercise discretion in deciding which question to address first. *Id.* at 236.

---

[12] Hastings and Smith also submit that this action is barred by the *Rooker-Feldman* doctrine or claim preclusion. However, Driggers asserts that he is not challenging the court's order but rather the independent claims the state court failed to remedy. Thus, the court will not address this argument.

Regarding Agent Smith Driggers contends: (1) Agent Smith told Driggers that he was violating the no-contact condition of his bond by continuing to have contact with the alleged crime victim; (2) Agent Smith disagreed with Driggers when he told her that the no-contact condition of the bond did not apply because he was in custody and was not released on bond; (3) Agent Smith told Driggers that she would get his visitation privileges stopped; (4) Agent Smith told Driggers that she had listened to recordings of his calls to the alleged crime victim, and that she had had conversations with ADA Hastings about possible charges and/or punishment for the calls made in violation of the bond; (4) Agent Smith maliciously lied to ADA Hastings, telling him that Driggers stated that he would not abide by any no-contact provision from any court, and that the alleged crime victim stated that she was afraid of Driggers and wanted no further contact with Driggers; (5) Agent Smith "beguiled" the alleged crime victim into believing that she had violated and would get into trouble for violating a no-contact order, and threatened the alleged victim by stating that she would be arrested if she did not "write a statement to that effect"; (6) Agent Smith listened to the telephone calls between Driggers and the alleged crime victim; (7) Agent Smith's assertions and blatant lies were the "substance and center" of the State's motion to restrict Driggers's communications with the alleged crime victim; and (8) Agent Smith conspired with ADA Hastings, Sheriff Schmaling, and Captain Wearing to punish Driggers for violating the no-contact condition of his bond even though the condition did not apply because Driggers was in custody and was not released on bond.

Driggers contends that ADA Hastings, Agent Smith, and Captain Wearing "conspired to punish this plaintiff for a violation of a bond that under law did not exist, thus conspired to punish this plaintiff before there was an adjudication of guilt in accordance

13

with due process of law, and to assist Agent Smith attain a statement from the alleged victim[.]"  (Pl.'s Resp., ECF No. 36 at 2.)  Driggers also contends that it was clearly established at the time of these officials' actions that the Due Process Clause of the Fifth and Fourteenth Amendments prohibit any kind of punishment of a pretrial detainee.  He goes on to state:

> [The] unending solitary confinement established by defendants Hastings, Smith, and Wearing were the sort of atypical and significant hardship, gave rise to a liberty interest that entitled this plaintiff to due process of the law, as they bore notable similarities to conditions which the U.S. Supreme Court has described as synonymous to extreme isolation.  Further, and moreover, they run afoul of Racine County Jail's steps or policy, as I was never given a hearing, or advised of what steps this plaintiff could take to try and mitigate the perceived need for continued segregation.  These conditions were excessive in relation to the purpose they served.
>
> Also, the equal protection clause of the 14 Amendment has been well established to prohibit intentionally treating people differently from others similarly situated.  Any absolute or qualified immunity defense must fail.

(Pl.'s Resp., ECF No. 36, at 6.)

Although Driggers alleges generally that Hastings and Smith conspired to punish him and have him placed in segregation, a closer look at the complaint and judicially noticeable exhibits reveals that Agent Smith investigated the contacts between Driggers and the alleged crime victim, reported her findings to ADA Hastings, and assisted ADA Hastings when he filed and argued a motion under Wis. Stat. § 940.47 to restrict communications between Driggers and the alleged crime victim.  At the hearing on ADA Hastings's motion, Driggers did not deny that he had contacts with the victim or that, on multiple occasions, he discussed the possibility of the alleged crime victim doing him a

"favor" by recanting her statement to the police about the alleged crime.[13] The court imposed the communication and visitation restrictions under Wis. Stat. § 940.47 and to abide by those restrictions, Driggers was placed in administrative segregation.

Captain Wearing informed ADA Hastings that Driggers would have to be placed in administrative segregation if the circuit court signed an order restricting his telephone calls but Hastings did not expressly seek placement in administrative segregation in his motion and order. Rather, he requested that Driggers be confined in a location such that compliance with the order would be ensured. At the hearing, ADA Hastings advised that jail personnel had informed him that Driggers would be placed in "administrative segregation" if the court signed the order.

According to Driggers, Agent Smith erroneously told him that the no-contact bond provision applied to him when he was not on bond. Defendants do not deny this. Driggers also alleges that Agent Smith emailed ADA Hastings and asked him if the restrictions applied and that ADA Hastings acknowledged at the hearing that they did not apply. The § 940.47 motion seeking the restrictions was filed based on Smith and Hastings's investigations and Driggers does not allege that Hastings lied about Driggers's contacts with the alleged victim.

Even if ADA Hastings and Agent Smith had conspired with Captain Wearing to restrict Driggers's communications with the alleged crime victim and to place him in

---

[13] Driggers submits that Agent Smith's "false assertions" and "blatant lies" were the "substance and center" of the motion and proposed order. However, based on these records, the "substance and center" of the motion are the claims that, (1) the same alleged crime victim recanted statements made to police after Driggers was arrested and charged, on the basis of those statements, less than six months earlier, and (2) "the State" (i.e., ADA Hastings) reviewed telephone logs and recordings of telephone conversations between Driggers and the alleged crime victim, in which Driggers discusses on multiple occasions the possibility of the alleged crime victim doing him a "favor" by recanting her statements to police.

administrative segregation, their actions would not have deprived Driggers of his constitutional due process rights because Driggers was placed in administrative segregation to satisfy the directive of the circuit court's order. Such placement was not, therefore, punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, if does not, without more, amount to 'punishment'." *See id.* at 539; *see Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315, 317-18 (1st Cir. 1995) (restricting the telephone and visitation privileges of a pretrial detainee, and placing him in segregation (23 hours a day), for offering a bribe to a prison guard to help him escape, did not constitute unconstitutional punishment of the pretrial detainee and instead was incident to the legitimate governmental objective of "maintaining security and order and operating the institution in a manageable fashion"); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1042-46 (9th Cir. 2002) (restricting the telephone calls of a pretrial detainee and placing him in administrative segregation did not constitute unconstitutional punishment).

Qualified immunity protects government officials from civil liability for damages "insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even if ADA Hastings and Agent Smith conspired with Captain Wearing to restrict Driggers's telephone calls and visitation, and to place him in administrative segregation, they are entitled to qualified immunity because a reasonable person would not have known that such conduct violated any clearly established statutory or constitutional rights.

## SCHMALING AND WEARING'S MOTION TO DISMISS

Sheriff Schmaling and Captain Wearing contend that the complaint fails to state a claim as to Schmaling because it does not allege personal involvement on the part of Sheriff Schmaling and because he cannot be liable based on his position as a supervisor. Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Top-level administrators are entitled to delegate to others the responsibility for specific prison functions. *See Burks*, 555 F.3d at 595.

Examination of the complaint reveals that it does not allege that Sheriff Schmaling was personally involved in the decision to place Driggers in segregation. Moreover, the complaint asserts that Sheriff Schmaling had direct knowledge of the allege constitutional violations because he was named in Driggers's petition for a writ of habeas corpus. This is not enough to plead an actionable § 1983 claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (Government officials may not be held liable, under Bivens or § 1983, for unconstitutional conduct of their subordinates under theory of respondeat superior; because vicarious liability is inapplicable, plaintiff must plead that each government official-defendant, through his or her own actions, has violated the Constitution).

Driggers alleges that Wearing conspired to place him in segregation. However, this allegation is without merit. As set forth herein, Driggers was placed in administrative segregation in order to comply with the circuit court's order and not as "punishment." *See Bell*, 441 U.S. at 535-37. Judge Flancher signed the order on June 6, 2013, and the order remained in effect until it was lifted on January 22, 2014. (Affidavit of John P. Serketich, ¶ 2, Exh. A). With respect to Driggers's allegation that he was treated differently than other

pretrial detainees, he does not allege that any other pretrial detainees were subject to a similar restrictive court order. As such, he fails to state a denial of equal protection claim.

Finally, Driggers asserts interference with his mail and noise interrupting his sleep. However, he fails to state constitutional claims for this charged activity because Captain Wearing is not alleged to have been personally involved in these matters. *See Burks*, 555 F.3d at 596. Therefore,

IT IS ORDERED that defendants Hastings and Smith's motion to dismiss (Docket 18) is GRANTED.

IT IS FURTHER ORDERED that defendants Schmaling and Wearing's motion to dismiss (Doc. 29) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for default judgment (Doc. 34) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for court to take judicial notice (Doc. 35) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to stay time limits to file response and for order to serve plaintiff with documents (Doc. 40) is DENIED AS MOOT.

IT IS FURTHER ORDERED that plaintiff's motion to appoint counsel (Doc. 49) is DENIED.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2015.

BY THE COURT
/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. District Judge